UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

GARY JACKSON,

        Plaintiff,

v.

HEIDI E. WASHINGTON et al.,

        Defendants.
_____/

Case No. 2:18-cv-73

Honorable Gordon J. Quist

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants for failure to state a claim.

## **Discussion**

### I. **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ojibway Correctional Facility (OCF) in Marenisco, Gogebic County, Michigan.

The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi E. Washington and the following OCF officials: Warden Kathy Olsen; Deputy Warden Mike Yon; Resident Unit Manager T. Perttu; and Accounting Technician M. Meneguzzo. Plaintiff sues Defendant Washington in her official capacity only. He sues the remaining Defendants in both their official and personal capacities.

According to the complaint, on September 12, 2017, Defendant Meneguzzo wrote a Class-II misconduct charge against Plaintiff based on Meneguzzo's monitoring of the JPay accounting system for prisoner deposits. According to the misconduct report, Plaintiff received a deposit of $250.00 from his mother, Louise Meacham-Edwards, which was intended to benefit Prisoner Meadows. The report indicated that messages showed that Prisoner Meadows had communicated on the JPay system for the deposit to Plaintiff's account, and the JPay communications showed evidence of a money gram being sent from Lawanda Lewis to Louise Meacham-Edwards. The messages also indicated that the funds were a repayment for funds previously sent to Plaintiff for the benefit of Prisoner Meadows. Prisoners are not allowed to receive or possess moneys sent on behalf of another prisoner. *See* MDOC Policy Directive 04.02.105 ¶ O (eff. Jan. 1, 2010). Money that a prisoner is not entitled to possess is contraband and must be turned over to the Prisoner Benefit Fund. MDOC Policy Directive 04.07.112 ¶ II (eff. Dec. 12, 2013); Mich. Admin. Code r. 791.5501(5).

On September 19, 2017, Defendant Perttu conducted a misconduct hearing, found Plaintiff guilty of the misconduct charge, and ordered restitution in the amount of $250.00, to be placed in the Prisoner Benefit Fund. Plaintiff complains that Defendant Perttu's hearing and order of restitution suffered from a variety of defects under MDOC policy. Specifically, Plaintiff complains that the hearing officer did not allow him to review the JPay messages, as should have

been allowed under Mich. Admin. Code r. 791.5501, so Plaintiff had no way to contest the content or authenticity of those messages. Plaintiff also contends that Defendant Perttu had no authority to order the funds confiscated as, according to Plaintiff, under MDOC Policy Directive 04.02.105 ¶¶ T-U; Mich. Admin. Code r. 791.6639, funds can only be taken pursuant to an administrative hearing conducted by a hearings officer, following issuance of a notice of intent to conduct such a hearing.

Plaintiff appealed Defendant Perttu's misconduct decision, as allowed under MDOC Policy Directive 03.03.105 ¶¶ UUU-XXX (eff. Apr. 9, 2012) and Mich. Admin. Code r. 791.5501. On September 28, 2017, Defendant Yon upheld the misconduct determination. Plaintiff alleges that Defendants Washington and Olsen are liable for failing to supervise their subordinates and perform their legal duties.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

3

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The majority of Plaintiff's allegations involve a central concern about how Defendants misapplied various provisions of MDOC policy and administrative rules. Specifically, Plaintiff contends that his property only could be taken under MDOC Policy Directive 04.02.105 ¶¶ T (requiring a factfinding hearing under Mich. Admin. R. 791.3310, which itself requires several elements: a notice of intent to conduct a hearing; a hearing conducted before a hearing officer as defined by Mich. Comp. Laws § 791.251; the right to be present and to speak in his own behalf and see relevant documents, unless the documents present a threat to security or safety; and

a summary report of the hearing and decision). Plaintiff contends that Defendants improperly confiscated the monies through the use of procedures established for Class-II misconduct charges for possession of contraband. *See* MDOC Policy Directive 03.03.105 ¶¶ KK-XX (requiring notice of the misconduct charge; an initial review with the prisoner by a supervisory staff member; an informal hearing before a resident unit manager; captain, and/or lieutenant with no involvement in the issue; reasonable investigation; and a written determination listing the reasons for the decision); *see also* Mich. Admin. Code r. 791.5501 (governing misconduct hearings and confiscation of contraband). Plaintiff alleges a variety of specific errors in the application of these policies.

To the extent that Plaintiff complains that officials did not use the correct policy or misapplied that policy, his claim is not cognizable in an action under 42 U.S.C. § 1983. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). A failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

Further, to the extent that Plaintiff claims that the improper application of MDOC policies deprived him of due process, his claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a

person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Although Plaintiff's complaint invokes state procedures, he does not challenge those procedures; he contends that the procedures were misapplied. Plaintiff's claim therefore is premised upon allegedly unauthorized acts of state officials, and he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112 ¶ B (eff. Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for

deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Moreover, even if his claim were not barred by *Parratt*, it is clear that Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284 n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974) (establishing minimum procedures for a prisoner facing the loss of good time credits); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).

In *Wolff*, the Supreme Court considered what process was due to a prisoner facing a disciplinary hearing in which he could lose good-time credits that could affect the length of his sentence. The Court will assume without deciding that the *Wolff* standard should apply to potential losses of property as well. The *Wolff* Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least

24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69.

Plaintiff does not even argue that he was deprived of one of the three *Wolff* elements. Notably, he does not dispute that money was impermissibly transferred to his account for the benefit of another prisoner. Instead, he suggests that the money in issue may have been only $50.00, rather than the $250.00 found by the misconduct hearing officer, an implicit admission that he in fact knowingly possessed at least some contraband. (Compl., ECF No. 1, PageID.9.) In addition, while he pleaded not guilty at the hearing, he did so solely on the basis of an argument that the officers could not prove that he had committed the offense, because the money actually was sent by his mother. (Misconduct Hr'g Report, ECF No. 1-1, PageID.30.) Plaintiff also argues that he should have received a copy of the JPay communications between the other prisoner and Lawanda Lewis and between Lewis and Louise Meacham-Edwards, because, theoretically, he could have somehow undermined those communications. None of these arguments suggests that Plaintiff failed to receive due process. Instead, they suggest that he received all of the process he was due, though he may not be happy with the result and may believe that other procedures should have been applied.

For all of these reasons, Plaintiff's complaint fails to state a claim on which relief may be granted. Accordingly, his complaint will be dismissed with prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated: June 13, 2018  /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE